IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER, F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 CV 8511 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Heather F. ("Claimant") brings a motion to reverse the final decision of the Commissioner of Social Security (the "Commissioner") to deny her claim for Supplemental Security Income ("SSI") benefits. The Commissioner brings a motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons stated below, Claimant's motion to reverse the Commissioner's final decision (Dckt. #20) is granted, and the Commissioner's motion for summary judgment (Dckt. #21) is denied.

I.  BACKGROUND

A.  Procedural History

On September 26, 2016, Claimant filed for SSI, alleging disability beginning November 1, 2014. (Administrative Record ("R.") 13). Claimant's application was denied initially and

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by her first name and the first initial of her last name. Furthermore, pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Acting Commissioner of Social Security Kilolo Kijakazi as the named defendant.

1

upon reconsideration. (R. 13). Claimant filed a timely request for a hearing, which was held on April 17, 2018, before an Administrative Law Judge ("ALJ"). (R. 13, 32-66). On September 6, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 13-25). Claimant filed a timely request for review with the Appeals Council. On October 28, 2019, the Appeals Council denied Claimant's request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (R. 1-3). This action followed.

      B.      **The Social Security Administration Standard**

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). It then determines at step two whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii). At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the

individual is considered disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C. Claimant's Arguments for Remand

Claimant urges this Court to reverse and remand the ALJ's decision to deny her an award of benefits based on several arguments, including that the ALJ failed to consider the limitations created by her mental impairment (namely, her anxiety) when the ALJ determined her RFC. Because this argument has merit, the Court finds that a remand to the Social Security Administration is warranted and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill,* 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and she is free to assert them on remand.

### D. The Evidence Presented to the ALJ

Claimant seeks disability benefits based on limitations stemming from her migraine headaches, neuropathy, degenerative disc disease of the cervical spine, myofascial pain

syndrome, history of meningitis, Crohn's disease, carpal tunnel syndrome, back pain, and anxiety. The Court will focus on the record evidence and testimony that pertains to Claimant's anxiety.

### 1.     Evidence from Claimant's Treating Physician

On October 7, 2014, Claimant was diagnosed with anxiety and headaches by Reda Kilani, M.D., who wrote Claimant a prescription for Xanax. (R. 339). Roughly a year later, on October 14, 2015, Claimant saw Dr. Kilani again and stated that she needed a check-up due to panic attacks. (R. 700). Claimant also expressed a desire to switch her medication to Lorazepam to treat her anxiety. (*Id.*). Dr. Kilani decided to slowly wean Claimant off Xanax and wrote her a prescription for Lorazepam. (R. 701).

### 2.     Evidence from Claimant's Mental Status Evaluations

On March 11, 2015, Michelle Krucek, Psy.D., performed a mental status evaluation on Claimant. (R. 463-68). Although Dr. Krucek's findings regarding Claimant were almost entirely normal, Claimant complained that she experiences "[a] lot of anxiety," does not "like to be around people she does not know," and can worry about situations "from [y]esterday, 40 years ago, [and] what can happen tomorrow." (R. 465, 466). Dr. Krucek diagnosed Claimant with "Anxiety State, Unspecified." (R. 468). Almost two years later, on February 4, 2017, Kristin Schoenbach, Psy.D., performed a second mental status evaluation on Claimant. (R. 512-14). Claimant reported that she had been diagnosed with anxiety and had been taking medication – including Lorazepam – for the past four years to deal with the condition. (R. 512). Claimant also reported that her medication had been helpful. (*Id.*). Dr. Schoenbach's findings regarding Claimant were normal. (*Id.*). Nonetheless, Dr. Schoenback found that Claimant met the diagnostic criteria for Unspecified Anxiety Disorder. (*Id.*).

### 3. Evidence from Agency Physicians

On March 10, 2017, State agency psychological consultant Russell Taylor, Ph.D., reviewed the record and determined that Claimant had "non-severe" anxiety and obsessive-compulsive disorders. (R. 78). Dr. Taylor further found that these mental disorders created "mild" limitations in Claimant's ability: (1) to "understand, remember, or apply information"; (2) to "concentrate, persist, or maintain pace"; and (3) to "adapt or manage [her]self." (*Id.*). Claimant, however, had no limitations with respect to her ability to interact with others per Dr. Taylor. (*Id.*). On May 9, 2017, at the reconsideration level, state agency psychological consultant Donald Henson, Ph.D., reviewed the record and reached the same opinion and findings as Dr. Taylor. (R. 91).

### 4. Evidence from Claimant's Testimony

Claimant appeared with counsel at the April 17, 2018 hearing before the ALJ. (R. 32, 34). At the time of the hearing, Claimant was fifty years old and living with her boyfriend, daughter, and granddaughter. (R. 40). She does not take care of her granddaughter and Claimant is "not ever really left alone" for a long period of time. (R. 48). She has a GED and has not worked since 2014. (R. 41). Claimant testified that anxiety is an issue for her and that she has been on Xanax for roughly four years. (R. 48-49). Claimant further testified that she has panic attacks "here and there" and that these attacks sometimes occur while she is driving. (R. 49). Claimant was "extremely anxious" during the hearing and testified that she does not "like to be around a lot of people at a time [because] [i]t cause[s] [her] anxiety and stress at the same time." (R. 49, 54).

### 5. The Vocational Expert's Testimony

The vocational expert ("VE") testified in pertinent part as follows. The VE first described Claimant's past work as a fast-food manager (a skilled occupation with a specific vocational preparation ("SVP") of five); as a general manager (a skilled occupation with an SVP of eight); and as a bartender (a semi-skilled occupation with an SVP of three). (R. 58-59). The ALJ then asked the VE the following hypothetical question:

> Considering [Claimant's] past work, I'm going to start by limiting the individual to light work with frequent, constant climbing ladders, ropes, or scaffolding. And, no concentrated exposure to vibration, or hazards, which I am defining as work at heights, or operation of a commercial vehicle. Also, avoid concentrated exposure to noise. I am going to limit her to environments with noise intensity levels of one, two, or three, as defined in the Dictionary of Occupational Titles. Starting with those restrictions, would any of the past work be available?

(R. 59). The VE testified that Claimant could perform all of her past relevant work, and that she could also perform a variety of unskilled occupations (including sorter, assembler, and packer). (R. 59-60).

## II. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her application date. (R. 15). Next, at step two, the ALJ determined that Claimant suffered from the severe impairments of migraine headaches, neuropathy, degenerative disc disease of the cervical spine, myofascial pain syndrome, and history of meningitis. (*Id.*). The ALJ considered Claimant's Crohn's disease, carpal tunnel syndrome, back pain, and anxiety, but found these impairments to be non-severe. (R. 16).

The ALJ determined that Claimant's anxiety was non-severe because it "d[id] not cause more than minimal limitation in [her] ability to perform basic mental work activities." (R. 16).

6

In making this finding, the ALJ considered the four broad areas of mental functioning that are set out in the governing disability regulations and found – in reliance of the opinions of the State agency consultants, Drs. Taylor and Henson[2] – that Claimant has "mild" limitations in her ability to: (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage herself. (R. 16-17).

At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. The ALJ went on to assess Claimant's RFC as follows:

> After careful consideration of the entire record, I find that the [C]laimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §416.967(b),[3] except that she could not climb ladders, ropes, or scaffolds; and could not have concentrated exposure to vibration, hazards (e.g., working at heights or operating commercial vehicles), or noise (limited to work performed in an environment with a noise intensity level of 1, 2, or 3, as defined in the Dictionary of Occupational Titles (DOT)).

(R. 18). The ALJ explained that these restrictions were "due to the limitations imposed by Claimant's migraine headaches, degenerative disc disease of the cervical spine, neuropathy, and myofascial pain syndrome." (R. 23).

At step four, the ALJ determined that Claimant was capable of performing her past relevant work as a fast-food manager and a bartender. (R. 23). Alternatively, at step five, the ALJ concluded that, given the Claimant's age, education, work experience, and RFC, she could perform other unskilled jobs (such as sorter, assembler, and packer jobs) that exist in significant

---

[2] The ALJ gave great weight to their opinions. (R. 22).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

7

numbers in the national economy. (R. 24). Therefore, the ALJ found that Claimant was not under a disability from the application date through the date of the decision. (R. 25).

### III. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

IV. ANALYSIS

    A. **The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairment when she determined Claimant's RFC.**

As stated above in Section II, the ALJ determined that Claimant's anxiety was a non-severe impairment that created minor limitations in her ability to understand, remember, or apply information; to concentrate, persist, or maintain pace; and to adapt or manage herself. However, the ALJ formulated Claimant's RFC without any consideration of these anxiety-related limitations. Claimant argues, among other things, that the ALJ erred by determining her RFC in this fashion. The Court agrees.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and] [a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Consequently, it is well-settled that the ALJ must incorporate all limitations arising from a claimant's mental impairments into her RFC, even if those mental impairments are non-severe and the limitations they impose on the claimant's capabilities are minor. *See, e.g., DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019); *Yurt v. Colvin,* 758 F.3d 850, 857-59 (7th Cir.

2014); *John M. v. Kijakazi*, No. 19 cv 1595, 2022 WL 220384, *9-10 (N.D.Ill. Jan. 25, 2022); *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3-4 (N.D.Ill. Jan. 28, 2019); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3-4 (N.D.Ill. Sept. 7, 2018); *Hovi v. Colvin,* No. 12-C-169, 2013 WL 3989232, at *16 (W.D.Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand.") (citing cases).

Incorporating such limitations into the RFC is crucial because "even mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform . . . skilled and semi-skilled work." *Cheryl C*, 2019 WL 339514, at *3; *Hovi*, 2013 WL 3989232, at *16. Furthermore, a claimant's ability to perform even unskilled work might be impacted or precluded by the claimant's difficulties with memory and concentration. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Craft,* 539 F.3d at 677-78. For these reasons, the ALJ's failure to incorporate Claimant's limitations created by Claimant's anxiety into her RFC was erroneous.

> **B.      The ALJ erred by failing to account for the limitations resulting from Claimant's mental impairment when she posed the hypothetical question to the VE.**

It is equally well-settled that an ALJ must "incorporate all of the claimant's limitations supported by the medical record" when the ALJ poses the hypothetical question to the VE, unless the record indicates that the VE has reviewed the claimant's medical records. *DeCamp*, 916 F.3d at 676; *Yurt*, 758 F.3d at 857-59 (citing cases); *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009); *Cheryl C*, 2019 WL 339514, at *4. The purpose of including a claimant's mental limitations in the hypothetical question is to "exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (internal quotation marks omitted).

10

Notwithstanding this precedent, the ALJ did not include the mild limitations resulting from Claimant's anxiety into the hypothetical question she posed to the VE in this case (*supra,* at Section I(D)(5)). Consequently, the VE's testimony that Claimant can perform her prior skilled/semi-skilled work as a fast-food manager and bartender – upon which the ALJ relied – is unsupported because the VE did not consider Claimant's mild functional limitations. The VE's testimony that Claimant could perform certain unskilled jobs is similarly flawed without consideration of Claimant's mental limitations. *Craft*, 539 F.3d at 677 (rejecting the proposition that an RFC and hypotheticals given to the VE adequately accounted for a claimant's mental impairments by limiting him to simple, unskilled work).[4]

In sum: the ALJ's failure to incorporate the limitations resulting from Claimant's anxiety into both the RFC and the hypothetical question posed to the VE was erroneous. "This failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC requires [the Court] to remand for further proceedings." *Yurt*, 758 F.3d at 859; *Craft*, 539 F.3d at 677-78.

---

[4] As "the Social Security Administration has explained: '[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.'" *Craft*, 539 F.3d at 677, *quoting* Social Security Ruling (SSR) 85-15, 1985 WL 56857 (Jan. 1, 1985); *O'Connor-Spinner*, 627 F.3d at 620.

11

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the Commissioner's decision to deny her SSI benefits (Dckt. #20) is granted and the Commissioner's motion for summary judgment (Dckt. #21) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** **June 3, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**